MAINE STATE DISTRICT COURT
SOMERSET COUNTY

CASE NO. CV-21-181

TEDDY DYER,
Individually and on Behalf of All
Others Similarly Situated,

RECEIVED
JUN 28 2021
Somerset County Courts

Plaintiff,

**CLASS ACTION**

v.

THE COUNTY of SOMERSET,

Defendant.

_____/

**CLASS ACTION COMPLAINT**

Plaintiff, Teddy Dyer ("Plaintiff"), individually and on behalf of all others similarly situated, sues Defendant, The County of Somerset (Hereafter "The County") and as grounds states:

**NATURE OF ACTION**

1. This is a class action brought on behalf of the Correctional Officers who worked at the Somerset Jail between July 1, 2015 and June 30, 2021 and were covered by any of the Collectively Bargaining agreements signed between those dates.

2. According to the plain language of the 2015 contract:" . . . the County shall submit a request to the U.S. Department of Labor (hereafter refer to as DOL) for a wage determination for correction officers based on the County's current contract with the U.S. Marshall's Service to house federal detainees at the Somerset County Jail".

3.      The 2015 contract also stated that: "The County agrees that if the wage determination is in excess of the current wages the County will meet and negotiate wages for the term of the current contract."

4.      Each year the DOL publishes a Register of Wage Determinations under the Service Contract Act.[1]

5.      DOL's Register of Wage Determinations provides a rate for many job classifications of service employees in Somerset County, including Correctional Officers.[2]

6.      The published Register of Wage Determinations in 2015 included a Note which states: "Executive Order (EO) 13658 establishes an hourly minimum wage of $10.10 for calendar year 2015 applies to all contracts subject to the Service Contract Act . . . the contractor must pay all workers in any classification listed on the wage determination at least $10.10 (or the applicable wage rate listed in the wage determination, if it is higher) ..."

7.      DOL's published Register of Wage Determination has been, and continues to be, higher than the rates Correctional Officers in Somerset County received between 2015 and 2021.

8.      Rather than accept rates in DOL's published Register of Wage Determinations, the County chose to not apply those rates, and sought an opinion from the DOL that the County need not pay the published rate for Correctional Officers in Somerset County.

9.      Due to delays in the negotiation process, the 2012 contract remained in effect until September 2016, at which time, the 2015 contract was signed to be in effect until June of 2017.

10.     The 2015 contract was extended in 2017, and still contained the language about meeting and negotiating salaries as was in the 2015 contract, while the County waited for DOL to respond to its request.

---

[1] In many years DOL publishes the register twice a year.
[2] DOL publishes it's Register of Wage Determinations at https://sam.gov

11. In October of 2019, The County entered into another Collective bargaining agreement for the Correctional Officer's services. This contract did not contain the language about meeting and negotiating based on the DOL Wage Determination.

12. These multi-year, fixed-price contracts were subject to the McNamara-O'Hara Service Contract Act of 1965 ("SCA"), 41 U.S.C. § 6701, et seq., and its implementing regulations.

13. Although the DOL's Register of Wage Determination is published yearly and posted to the DOL's website, the County of Somerset failed to meet and negotiate wages for the term of the 2015 and 2017 contracts.

14. The County of Somerset also failed to meet and negotiate wages for the current contract after becoming aware that the DOL's wage scale determination for Correctional Officers exceeded the wages the County had been paying its Correctional Officers.

15. Had the County met and negotiated wages in accordance with the DOL's wage scale determination, not only would the salaries paid under the 2015 have increased, but the hourly wage for Correctional Officers under the subsequent contracts would also have increased.

16. The contract signed in 2015 and the subsequent contracts are subject to the McNamara-O'Hara Service Contract Act of 1965 ("SCA"), 41 U.S.C. § 6701, et seq., and its implementing regulations.

17. As relevant here, the SCA requires that a service contract include provisions specifying the contract's "wage determination," which sets the wage rates and fringe benefits that must be paid to various classes of covered service employees. Covered service employees are entitled to a wage determination providing wages and fringe benefits equal to or greater than: (1) the minimum wage provided pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206; (2) the prevailing rates provided in the locality where the services are performed, as

determined by the Department of Labor ("DOL"); or (3) the rates contained in the predecessor contract's collective bargaining agreement. 41 U.S.C. §§ 6703, 6704; 48 C.F.R. §§ 22.1002-2, 22.1002-3; see also Lear Siegler Servs., Inc. v. Rumsfeld, 457 F.3d 1262, 1266–67 (Fed. Cir. 2006).

18.     Among other things, the SCA ensures that service employees who were protected by a collective bargaining agreement with one contractor are not deprived of the wages and benefits negotiated in that collective bargaining agreement when the contract they work on is competitively awarded to a new contractor. Otherwise, if an incumbent contractor agreed to a collective bargaining agreement that provided for wages and benefits greater than the prevailing wage rate, a challenger could under-bid the incumbent for the follow-on contract by providing its employees with lower wages and less valuable benefits. By requiring a successor contractor to provide wages and fringe benefits of equal or greater value than the predecessor contractor, the government protects covered service employees from losing the protection of their collective bargaining agreements. The government also protects itself from successor contractors who might introduce performance risk in the form of underpaid or low-quality labor.

19.     These requirements are reflected in Federal Acquisition Regulation ("FAR") clause 52.222-41 entitled Service Contract Labor Standards, which is incorporated by reference into most contracts, and we believe is incorporated in the County's contract with the United States Marshal service.[3]

20.     One of the principal policy implications of the SCA is that the U.S. government, as a customer, is willing to pay a premium for services in return for its contractor's obligation to compensate service employees adequately and fairly. Accordingly, the government is willing to increase contract price when contractors incur increased costs as a result of complying with an

---

[3] We have not seen the County's contract with the U.S. Marshals, but plan to pursue this line of inquiry during discovery.

increase in the wage determination applicable to their contract. In effect, the contractor is entitled to a price adjustment to reflect increased labor costs associated with complying with an increase in the FLSA minimum wage rate, DOL prevailing wage rate, or the predecessor contract's collective bargaining agreement. The mechanism for providing that price increase is the SCA Price Adjustment Clause. (See <u>Call Henry Inc. v. United States</u> available at https://www.govinfo.gov/content/pkg/USCOURTS-ca13-16-01732/pdf/USCOURTS-ca13-16-01732-0.pdf )

21. For multi-year and option contracts, such as the one at issue in this case, there should be an applicable SCA Price Adjustment Clause such as FAR 52.222-43. Usually, paragraph (d) of that clause provides a framework for increasing the unit labor rates in a service contract when certain events occur that increase the costs of complying with an increased wage determination. That paragraph usually acknowledges cost increases due to an increase in the FLSA minimum wage or DOL prevailing wage rate. It also recognizes cost increases that occur by operation of law, such as when a successor contract is bound by the wages and benefits provided in a predecessor contractor's collective bargaining agreement.

**Breach of the Implied Covenant of Good Faith and Fair Dealing.**

22. Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in paragraphs 1-21 of this Complaint.

23. Federal common law imposes an implied covenant of good faith and fair dealing in the performance of all contracts.

24. The 2015 and 2017 contracts include terms stating that if the DOL's wage determination exceeds the current wages the County will meet and negotiate wages for the term of the contract.

25. The County knew, or should have known, that DOL publishes its Register of Wage Determinations on its website.

26. The County knew or should have known, that DOL's Register of Wage Determinations exceeded the wages being paid under the 2015 and 2017 contracts, and that the County's refusal to negotiate wages in accordance with the published DOL wages was a breach of the 2015 and 2017 contracts.

27. Defendant has breached the implied covenant of good faith and fair dealing by refusing to meet and negotiate wages for the 2015 and 2017 contracts.

28. Had Defendant met and negotiated wages for the 2015 and 2017 contracts, the wages under all subsequent contracts would also be higher.

29. Defendants claim they do not have to meet and negotiate wages based on the DOL's wage determination because DOL concluded the contract with the U.S. Marshal's was a sole source contract and therefore McNamara-O'Hara Act does not apply.

30. Nothing in the County's contract with its Correctional Officers would exclude the County from and negotiating wages based on DOL's wage scale determination.

31. Furthermore, nothing in the McNamara-O'Hara Act would make the Act not be applicable to a contract based solely on the contract being a sole source contract.

32. Even is a Sole Source Contract would exclude a contractor from meeting its obligations under the McNamara-O'Hara Act, the U.S. Marshal's service has contracts with several jails in Maine, which means it's contract with Somerset County could not possibly be a classified as a Sole Source Contract since several jails in Maine have contracts to provide similar services.

33. Plaintiff and the Class performed their duties under the contracts or were excused from doing so.

34. As a direct and proximate cause of Defendant's breach of the implied covenant of good faith and fair dealing under the contracts, Plaintiff and the Class were harmed and are owed compensatory damages.

35. Despite the plain language of the 2015 and 2017 contracts, and the McNamara-O'Hara Act, the County Fee still refuses to negotiate rates based on the DOL's wage scale determination, as they contractually agreed to do.

36. Defendant continues to foster a situation where Correctional Officers are under paid.

37. This failure by Defendant is a breach of its contracts with Plaintiff and other members of the proposed Class (defined below).

38. Defendant likewise is breaching the implied covenant of good faith and fair dealing with the Plaintiff and members of the proposed class.

39. Accordingly, Defendant owes Plaintiff and the Class damages as compensation for the failure to negotiate and for withheld wages.

## JURISDICTION AND VENUE

40. This Court has jurisdiction over this action pursuant to Maine Revised Statute Title 4, Chapter 5, section 152 (2) and Title 4, Chapter 5, section 152 (5) (I). Venue is proper in this Court, where the Plaintiff resides, pursuant to Maine Revised Statute Title 4, Chapter 5, section 155 (4).

## PARTIES

41. Plaintiff, Teddy Dyer is a Maine resident with his principal residence in Madison, Maine. During the time-period of the proposed Class, Plaintiff was a Correctional Officer at the Somerset County Jail until his retirement in August of 2019.

42. Defendant, The County of Somerset, includes Somerset County and its Commissioners who administer the budget and contracts for the County jail.

43. The Somerset County Commissioner's Office is at 41 Court Street, Skowhegan, ME 04976.

## FACTUAL ALLEGATIONS

### The Contracts for Correctional Officers

44. Due to delays during negotiations, the 2015 contract with Correctional Officers was not signed until September 2016.

45. The 2017 contract with Correctional Officers was an extension of the 2015 contract, and was signed in 2017.

46. Both the 2015 contract, signed in September of 2016, and the 2017 contract, signed in 2017, contained language stating "The County agrees that if the wage determination is in excess of the current wages the County will meet and negotiate wages for the term of the current contract."

47. The 2019 contract with Correctional Officers was signed in October 2019.

48. The 2019 contract did not contain the "meet and negotiate wages clause …"

49. The DOL published its Register of Wage Determinations Wage scale determination for Somerset County each year between 2015 and 2021.

50. The County failed to negotiate wages based on the DOL's published Register of Wage Determinations and has claimed the wages in DOL's published Register of Wage Determinations are inapplicable because the contract with the U.S. Marshall's Service was a sole source contract.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this class action on behalf of himself and all others similarly situated as members of a proposed Class defined as follows: **All Correctional Officers who worked in the Somerset County Jail within the last six years**.

Excluded from the Class are any persons who worked as Correctional Officers at the Somerset County Jail during the class period and were paid a base hourly wage greater than the DOL's wage scale determination. (base hourly wages is the hourly wage paid without including increases for education or overtime) This action is brought as and may properly be maintained as a class action pursuant to Rule 23 of the Maine Rules of Civil Procedure.

52. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

53. *Numerosity Under Rule 23(a)(1).* The Class is so numerous that the individual joinder of all members ("Class Members") is impracticable. While the exact number of Class Members is currently unknown and can only be ascertained through appropriate discovery, the Somerset County Jail has had dozens and dozens of Correctional Officers during the past 6 years. This is more than sufficient to satisfy the numerosity requirement. Each of these Class Members can also be ascertained by referencing the County's business records, which include the contact information for Class Members.

54. *Commonality Under Rule 23(a)(2).* Common legal and factual questions exist that predominate over any questions affecting only individual Class Members. These common questions, which do not vary among Class Members and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

A. Whether Defendant breached its contract by not meeting and negotiating wages after the DOL's wage scale determination was published.

B. Whether the wages for any and all contracts after the 2015 contract would also have increased wages due to the DOL's wage scale determination.

C. Whether Defendant owes back wages based on what the wages should have been, and how much those wages should be.

D. Whether Defendant breached the implied covenant of good faith and fair dealing by contract by failing to meet and negotiate wages after the DOL's wage scale determination was published.

55. Each of these common questions is also susceptible to a common answer that is capable of class-wide resolution and will resolve an issue central to the validity of the claims.

56. ***Adequacy of Representation Under Rule 23(a)(4).*** Plaintiff is an adequate Class representative because it is a Class Member, and its interests do not conflict with the Class's interests. Plaintiff has retained counsel that is competent and experienced in class actions. Plaintiff and its counsel intend to prosecute this action vigorously for the Class's benefit and will fairly and adequately protect the Class's interests.

57. ***23(b)(2) Generally Applicable Grounds.*** The Class can be properly maintained under Rule 23(b)(2). Defendant has failed, and continues to fail to meet and negotiate wages in response to the DOL's wage scale determination. Defendant, therefore, has acted or refused to act, with respect the issues presented in this Complaint, on grounds generally applicable to the Class.

58. ***Rule 23(b)(3) Predominance and Superiority.*** The Class can be properly maintained under Rule 23(b)(3), because the above common questions of law and fact predominate over any questions affecting only individual Class Members. A class action is also superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class Member's claim is impracticable. Even if each Class Member could afford individual litigation, the court system could not. It would be unduly burdensome if dozens and dozens of individual cases were to proceed. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it requires individual resolution of common legal and factual questions. By contrast, the class-action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF COUNT I

### Breach of Contract

59. Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in paragraphs 1-58 of this Complaint.

60. The 2015 and 2017 contracts both state that if the DOL's wage determination exceeds the current wages the County will meet and negotiate wages . . ."

61. DOL's wage determination clearly exceeded the wages being paid to Correctional Officers by the County.

62. Defendant, improperly refused to meet and negotiate wages as required under the 2015 and 2017 contracts.

63. Under the terms of the contracts, the wages should have been renegotiated in response to the DOL's wage determination exceeding the wages being paid by the county.

64. By failing to meet the wages in the DOL's wage determination, Defendant violated an express term of the contract. As a result, the Defendant breached their contracts with Plaintiff and the Class.

65. Plaintiff and the Class performed their duties under the contracts or were excused from doing so.

66. As a direct and proximate cause of Defendant's breach of the contracts, Plaintiff and the Class were harmed and are owed compensatory damages.

## COUNT II

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

67. Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in paragraphs 1-66 of this Complaint.

68. Common law imposes an implied covenant of good faith and fair dealing in the performance of all contracts.

69. DOL's wage determination clearly exceeded the wages being paid to Correctional Officers by the County.

70. Defendant, improperly refused to meet and negotiate wages as required under the 2015 and 2017 contracts.

71. The 2015 and 2017 contracts both state that if the DOL's wage determination exceeds the current wages the county will meet and negotiate wages . . ."

72. Under the terms of the contracts, the wages should have been renegotiated in response to the DOL's wage determination exceeding the wages being paid by the county.

73. By failing to meet the wages in the DOL's wage determination, Defendant has breached the implied covenant of good faith and fair dealing

74. Plaintiff and the Class performed their duties under the contracts or were excused from doing so.

75. As a direct and proximate cause of Defendant's breach of the contracts, Plaintiff and the Class were harmed and are owed compensatory damages.

76. Defendant has breached the implied covenant of good faith and fair dealing in the performance of these contracts by failing to meet and negotiate wages that were published by the DOL in its Register of Wage Determinations.

77. Defendant continues to breach the implied covenant of good faith and fair dealing in the performance of these contracts by failing to meet and negotiate wages that are published by the DOL in its Register of Wage Determinations.

78. Plaintiff and the Class performed their duties under the contracts or were excused from doing so.

79. As a direct and proximate cause of Defendant's breach of the implied covenant of good faith and fair dealing under the contracts, Plaintiff and the Class were harmed and are owed compensatory damages.

## COUNT III

### Illegal Exaction

80. Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in paragraphs 1-79 of this Complaint.

81. DOL's published Register of Wage Determinations clearly exceeded the wages being paid to Correctional Officers by the County.

82. Defendant, improperly refused to meet and negotiate wages as required under the 2015 and 2017 contracts.

83. By refusing to negotiate wages that matched or exceeded the DOL's wage determination as required by the McNamara O'Hara Act, the County withheld wages that are owed to the County's Correctional Officers.

84. Defendant has retained the funds it unlawfully withheld from Plaintiff and the Class and has not reimbursed or otherwise compensated Plaintiff and the Class.

85. Plaintiff and the Class seek payment of all wages that should have been paid to meet the DOL's published wage in its Register of Wage Determinations for Correctional Officers in Somerset County.

### Prayer for Relief

Plaintiff, on behalf of itself and the Class, requests that the Court order the following relief and enter judgment against the Defendant as follows:

A. An order certifying the proposed Class under Maine Rule of Civil Procedure 23;

B. An order appointing Plaintiff and its counsel to represent the Class;

C. A finding that Defendant breached its contracts with Plaintiff and the Class;

D.  A finding that Defendant breached the implied covenant of good faith and fair dealing with the Class;

E.  A finding that the Defendant illegally exacted money from Plaintiff and the Class in violation of the Due Process Clause of the Fifth Amendment;

F.  A judgment awarding Plaintiff and the Class compensatory damages and any other damages authorized by law in amounts to be proven at trial;

G.  Pre-judgment and post-judgment interest at the maximum allowable rate;

H.  Attorneys' fees and expenses and the costs of this action; and

I.  All other relief, including equitable and injunctive relief, that this Court deems necessary, just, and proper.

Dated: June 28, 2021

By: /s/ Wendell A. Skidgel Jr.

Wendell A. Skidgel, Jr.

Maine Bar No. 008950

**Wendell's Law Firm**

2 Perch Road

Madison, ME 04950

Tel: (800) 466-20934

Email: W@Wendellslaw.com